UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW HEMELBERG,        CASE NO. 18-CV-12196
                               HON. GEORGE CARAM STEEH
        Plaintiff,

v.

CITY OF FRASER, WAYNE
O'NEAL, MICHAEL
CARNAGIE, KATHY BLANKE,
and MICHAEL LESICH,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (Doc. 9)**

**I. Overview**

Plaintiff Matthew Hemelberg, former Council member of the City of

Fraser, who was removed by majority vote of the City Council following a

tribunal hearing regarding sexual harassment claims against him, alleges

his removal was in retaliation for his opposition to a tax increase in

violation of his First Amendment rights pursuant to 42 U.S.C. § 1983, and

in violation of the Michigan Constitution on the grounds that only the

governor can remove an elected City Council member from office.  Now

before the court is Defendants' motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) or for summary judgment.  Because Plaintiff has already litigated the subject matter of this lawsuit in state court against the same parties and their privies, and based on the doctrine of res judicata, Defendants' motion for summary judgment shall be granted.

## II. Background

Plaintiff Matthew Hemelberg was elected as a Council member in the City of Fraser in November 2013.  (Doc. 1, ¶¶ 4,11).  In 2017, Defendant City Manager Wayne O'Neal observed Plaintiff massaging the shoulders of the City librarian, Loretta McDowell.  (Doc. 9, Ex. 4 at PgID 143). O'Neal spoke to McDowell about the incident, and she told him the touching was unwanted.  *Id.*  After her complaints, and others against the City Mayor, and after hearing "some rumblings" from other employees, O'Neal hired attorney Thomas Fleury in May, 2017 to investigate Plaintiff and Mayor Nichols regarding whether they had sexually harassed employees.  *Id.* at PgID 143-44.

Plaintiff challenges O'Neal's motives in initiating the investigation. He alleges that when O'Neal became Interim City Manager, he threatened Plaintiff that unless he ceased his opposition to the tax increase which four other Council members supported, he would remove him from office. Plaintiff further claims that Defendant Council member Michael Carnagie

also threatened Plaintiff that City Council would remove him from office unless he ceased his opposition to the five mill tax increase. Plaintiff claims O'Neal orchestrated an effort to remove him by encouraging female employees to bring forward bogus claims of sexual harassment.

O'Neal, on the other hand, claims he was motivated to pursue an investigation because he witnessed Plaintiff massaging the shoulders of the City's librarian which appeared to be unwelcome. Fleury interviewed eight City employees and prepared a 16-page report that was later used as an exhibit at the tribunal hearing regarding Plaintiff's removal from office. (Doc. 9, Ex. 4 at PgID 136, Ex. 6). Around this same time, on June 8, 2017, Council member Kathy Blanke moved to approve a resolution to levy the five mill tax assessment, which Plaintiff, Council member Foster, and Mayor Nichols opposed, thus sealing its demise because the Council was unable to garner the five votes needed to raise taxes. (Doc. 12, Ex. 5 at PgID 647). On June 12, 2017, the City Council voted to retain Fleury to give his opinion and report in a closed session. (Doc. 9, Ex. 7 at PgID 210). After Fleury gave his report at the closed session, the Council voted to proceed with a tribunal hearing to consider Plaintiff's removal. (Doc. 9, Ex. 8 at PgID 217-218).

The tribunal hearing was scheduled for September 18, 2017. Prior to the tribunal hearing, on September 8, 2017, Plaintiff and Mayor Nichols filed a petition for a writ of superintending control in Macomb County Circuit Court seeking to enjoin the tribunal hearing from going forward, and seeking a temporary restraining order. (Doc. 9, Ex. 12). In that petition, Plaintiff argued that the Council lacked the authority to hold a tribunal hearing and argued a violation of due process. *Id.* Interested parties identified in that petition were the City of Fraser and the Fraser City Council. *Id.* The Circuit Court denied the petition as premature because the hearing had not yet taken place and denied the motion for a temporary restraining order. (Doc. 9, Ex. 14). The Circuit Court also ruled that the hearing was permitted under the City Charter, *id.* at PgID 413, the Council gave notice of the charges against them, *id.* at PgID 414, and O'Neal had authority to hire Fleury prior to Council's vote to retain him. *Id.* at PgID 415.

The City Council held the tribunal hearing as scheduled. Retired Judge Peter Maceroni presided over the tribunal hearing. (Doc. 9, Ex. 4 at PgID 132). At the hearing, O'Neal and Fleury testified, as well as four female employees. (Doc. 9, Ex. 4). Three females testified against Plaintiff and Mayor Nichols, and one in favor of Plaintiff and Mayor Nichols.

*Id.*   Of those, Plaintiff alleges only one accused him of sexual harassment.   In fact, Leah Brown testified that Plaintiff commented on her clothing, ogled her, and looked at half naked pictures of women in front of her.  *Id.* at PgID 147-50.  Michele Kwiatkowski testified that she witnessed Plaintiff treating Brown inappropriately.  *Id.* at PgID 153-54.  Also, Kelly Dolland testified that she overheard Plaintiff and the mayor making inappropriate and lewd comments regarding women on numerous occasions.  *Id.* at PgID 155-56.  At the conclusion of the proofs, Council member Defendant Kathy Blanke moved to remove Plaintiff for misconduct which passed by majority vote.   *Id.* at PgID 162.  The Council also voted to remove Mayor Nichols.  *Id.* at PgID 162-63.  On October 6, 2017, three female employees filed a sexual harassment lawsuit against Plaintiff, the City of Fraser, and Mayor Nichols in Macomb County Circuit Court.  (Case No. 2017-003757-CD).

Also, on October 6, 2017, Plaintiff and Mayor Nichols then filed a motion for a writ of superintending control, this time challenging their removal on a myriad of grounds including, among other things: lack of evidence, bias of Council members, violations of due process including inability to cross-examine witnesses, erroneous conclusions, and failure to put forth formal charges or to inform them of the standards for decision

making.  (Doc. 9, Ex. 15).  Plaintiff and Mayor Nichols requested that the
Circuit Court reinstate them to their respective offices and also sought an
award of attorney fees and costs.  (Doc. 9, Ex. 15 at PgID 421).  The
Circuit Court denied the petition for a writ of superintending control on
December 7, 2017.  (Doc. 9, Ex. 17).  Mayor Nichols appealed (Doc. 9, Ex.
19), but Plaintiff did not.  Instead, Plaintiff filed this lawsuit.

This lawsuit arises out of the same transaction and facts as the state
court action, yet Plaintiff asserts slightly different legal theories.  Here,
Plaintiff argues that his removal was motivated by the fact that he, Mayor
Nichols, and another Council member resisted efforts by the other four
Council members to raise taxes unless there was also an agreement to
reduce government spending.  Specifically, the Complaint sets forth two
counts.  Count One alleges that his removal was retaliation for the
exercise of his First Amendment rights in opposing the tax increase
pursuant to § 1983.  Although the Complaint also alleged a due process
violation, in the motion papers now before the court, Plaintiff stipulates to
dismissing his due process claim.  (Doc. 12 at 11 n.2, PgID 562).

Count Two alleges a violation of the Michigan Constitution on the
grounds that the City Council lacks the authority to remove him from office,
but that only the governor has that power pursuant to Mich. Comp. Laws §

168.327.  Defendants, on the other hand, argue that Section 5.2 of the City Charter gives the Council the authority to remove a Council member for misconduct.

### III**. Standard of Law**

Defendants move for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment.  Because the court has considered matters outside the pleadings, the court treats Defendants' motion as a motion for summary judgment.  Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is

appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations

or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## IV. Analysis

This federal court action is barred by the doctrine of res judicata based on Plaintiff's prior filing of a state lawsuit arising out of the same operative facts against the City of Fraser and the City of Fraser City Council. For purposes of addressing the res judicata issue, the court reiterates Plaintiff's claims here: Count I alleges violations of Plaintiff's First Amendment rights arising out of his removal pursuant to § 1983; and Count II alleges a violation of Michigan's Constitution on the grounds that only the Governor had the authority to remove him from office, not the City Council. Both claims could have been litigated in the prior state court action as discussed below.

The Sixth Circuit has outlined a two-step process for determining whether a federal claim is barred by a prior state court judgment: first, whether state res judicata principles bar the second federal lawsuit; and second, whether the application of state res judicata principles constitute

an "extreme application [] of the doctrine of res judicata . . . inconsistent with a federal right that is fundamental in character." *Ludwig v. Twp. of Van Buren*, 682 F.3d 457, 460 (6th Cir. 2012). Under both prongs, res judicata applies here, and the state court judgment necessarily bars Plaintiff's subsequent federal lawsuit which arises out of the same transaction.

When considering the preclusive effect of a state court judgment, the law of that state controls — here, Michigan. *Hamilton Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007). Michigan courts would bar Plaintiff's action under the principles of res judicata as outlined in *Adair v. State*, 470 Mich. 105 (2004). In Michigan, res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* at 121. Michigan "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* All three factors are satisfied here.

(1) **On the Merits**

First, the parties agree the prior state lawsuit was decided on the merits.

(2) **Same Parties or their Privies**

Second, the court considers whether the parties in this case are the same parties or their privies as in the prior action in Macomb County Circuit Court. Plaintiff argues that Defendants are not the same parties as the defendants in the Macomb County lawsuit, but that is not required. All that is necessary is that the defendants in the subsequent lawsuit be in privity with the defendants in the prior lawsuit. In order to establish privity, the parties in the second action "need only be substantially identical to the parties in the first action, in that the rule applies to both parties and their privies." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12 (2003). Michigan law defines privity broadly:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a "substantial identity of interests" and [2] a "working functional relationship" in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734–35 (6th Cir. 2006) (quoting *Adair*, 470 Mich. at 122).

The Defendants in this case are (1) the City of Fraser, (2) City Manager Wayne O'Neal, (3) City Council member Michael Carnagie, (4) City Council member Kathy Blanke, and (5) City Council member Michael Lesich. The named defendants or interested parties in the Macomb County suit were the City of Fraser and the City of Fraser City Council. (Doc. 9, Ex. 12 at PgID 232). Thus, the City of Fraser is the same party in this suit. The court next considers whether City Manager Wayne O'Neal is in privity with the City of Fraser as an employee of that entity and finds that he is. *See* O'Neal's Employment Agreement with the City of Fraser. (Doc. 9, Ex. 1). "The test for privity among the parties is met when the parties stand in an employer-employee relationship." *LG Sciences, LLC v. Putz*, No. 11-10830, 2012 WL 1094336, at *5 (E.D. Mich. Mar. 30, 2012), *aff'd*, 511 F. App'x 516 (6th Cir. 2013). Also, the Sixth Circuit has held that privity is established under Michigan law "when the previous governmental unit Defendant [] and the present-case [individual named defendants] have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second." *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010); *see also Larry v. Powerski*, 148 F. Supp. 3d 584, 595 (E.D. Mich. 2015) (privity between hospital where plaintiff worked named as a

defendant in the first lawsuit and plaintiff's supervisor named as defendant in second suit); *Coatney v. City of Dearborn*, No. 07-15371, 2009 WL 322032, at *3 (E.D. Mich. Feb. 10, 2009) ("The individual defendants in the present matter were not parties to the prior action; however, as employees of Defendant City of Dearborn, they are in privity with the City of Dearborn."). Based on the employer-employee relationship between O'Neal and the City of Fraser, he is in privity with the defendants or interested parties in the prior state court action. The City of Fraser was a defendant or interested party in the prior lawsuit. (Doc. 9, Ex. 12 at PgID 232). Similarly, the City Council was a defendant or interested party in the prior lawsuit. *Id.*

That leaves for consideration only whether the named City Council members are in privity with the City of Fraser and City Council for purposes of claim preclusion. The Complaint does not clearly delineate whether the City Council members are named in both their official and individual capacities. It appears that Defendants are operating under the assumption that they are named in both capacities; however, as they have argued they are shielded by qualified immunity which only applies to suits brought against them in their personal capacities. *See United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 484 (6th Cir. 2014). Thus, the

court proceeds with the understanding that the Complaint names the individual Council members in their official and personal capacities.  A suit brought against a city official in his official capacity is, in effect, a suit against the city itself.  *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003).  "'A government official sued in his or her official capacity is considered to be in privity with the government.  Therefore . . . a prior judgment involving the government will bar an action against individual officers of the government in their official capacity for the same claim.'"  *Pittman v. Michigan Corrs. Org.*, 123 F. App'x 637, 640 (6th Cir. 2005) (quoting *Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998)).  Accordingly, it is clear that the City Council members sued in their official capacity are in privity with the City and City Council.

That leaves only the question whether the Council members sued in their individual capacities are also in privity with the City.  Under the Sixth Circuit's holding in *McCoy, supra*, applying Michigan law, they are.  In that case, the Sixth Circuit held that under Michigan law, "a perfect identify to the parties is not required; rather, the Michigan courts require a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the

litigation."  369 F. App'x at 650 (internal quotations marks omitted and citing *Adair*, 470 Mich. at 122.

The Court found that whether the defendants were named in their individual or official capacities was irrelevant where their interests were presented and protected in the prior suit.  *Id.*  Here, the Council members have an identify of interest as the City Council itself, regardless of the capacity in which they are sued.  *Id.*[1]  Accordingly, the second element of res judicata that the same parties or privies must be involved as in the prior state court lawsuit is satisfied.

### (3) **Same Matter in Issue**

The third prerequisite to claim preclusion under Michigan law is that the second action raise the same matter in issue as the first action.  To determine whether this element is met, Michigan courts apply the "same transaction test."  *Garrett v. Washington*, 314 Mich. App. 436, 442 (2016).  Under this test, "the determinative question is whether the claims in the instant case arose as a part of the same transaction as did [the] claims in the [original action]."  *Id.* (quoting *Adair*, 470 Mich. at 125).  Under that

---

[1] The federal law regarding principles of privity under *res judicata* is narrower than Michigan law.  Under federal law, while privity generally exists between a city official sued in his or her official capacity and the city, the opposite is generally true as to a city official sued in his or her personal capacity.  *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003); *Leirer v. Ohio Bureau of Motor Vehicles Compliance Unit*, 246 F. App'x 372, 374-75 (6th Cir. 2007) (collecting cases).

"pragmatic test," "a claim is viewed in factual terms and considered coterminous with the transaction, regardless of the number of substantive theories, or *variant forms of relief* flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights." *Adair*, 470 Mich. at 124 (internal quotation marks and citations omitted) (emphasis added). "Courts employing the transactional test have generally acknowledged that a new action will be permitted only where it raises *new and independent* claims, not part of the previous transaction based on the new facts." *McCoy, supra*, 369 F. App'x at 650 (internal quotation marks and citation omitted) (emphasis in original). The test considers "whether the facts are related in time, space, origin or motivation." *Id.*

Here, the state court proceeding challenged Plaintiff's removal from office by the City Council for a myriad of reasons, including violations of due process. Although Plaintiff did not argue that the Council violated his First Amendment rights, or lacked the authority to remove him under Mich. Comp. Laws § 168.327 on the grounds that only the Governor had this power, nothing prevented him from making these arguments. The Circuit Court considered whether the City Council had the authority to remove

Plaintiff from office and determined that it did.  (Doc. 9-15 at PgID 398-400).

These new legal theories presented in this federal action arise out of the same facts and evidence as presented in the original state court action and could have been raised there.  The Sixth Circuit has cited with approval the Restatement of Judgments, 2d summary of the principles of res judicata as follows:

> A given claim may find support in theories or grounds arising from both state and federal law. When a plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.

*Coe v. Michigan Dep't of Educ.*, 693 F.2d 616, 618 (6th Cir. 1982) (citing Restatement of Judgments 2d § 25, Comment e).  Based on these well-established principles, Plaintiff is not entitled to bring a second lawsuit arising out of the same transaction.  He has already had his day in court. If he was dissatisfied with the Circuit Court's decision, his option was to file an appeal, not to refile in federal court arising out of the same operative facts.

No Michigan or federal law prohibited Plaintiff from asserting his

instant claims in his superintending control action in state court. Michigan

circuit courts are courts of general jurisdiction, Mich. Comp. Laws §

600.605, and the state's rules regarding writs of superintending control

permit joining other claims. Mich. Ct. R. 3.301(B); *see Scott v. Reif*, 659 F.

App'x 338, 343 (6th Cir. 2016) (discussing writ of mandamus). Circuit

Courts have concurrent jurisdiction over § 1983 claims*. Dep't of Treasury

v. Campbell*, 161 Mich. App. 526, 529 (1986) (per curiam).

The Michigan Court of Appeals addressed a similar case in *Harmon

v. City of Detroit*, No. 217820, 2001 WL 716793, at *1 (Mich. Ct. App. Mar.

9, 2001) (per curiam), where plaintiff filed a writ of superintending control

to challenge an adverse decision by the civil service commission affirming

her transfer to a lower ranking position and reduction in pay. While the

superintending control action was pending, plaintiff filed a second suit in

Wayne County Circuit Court alleging race, gender, and age discrimination

in violation of the Michigan and United States Constitutions. *Id.* The

Circuit Court granted summary disposition in favor of defendant in the

superintending control suit. *Id.* Thereafter, the Circuit Court dismissed the

second filed discrimination suit based on the doctrine of res judicata. The

Court of Appeals affirmed holding that plaintiff could have joined her

discrimination claims in the action for superintending control.  *Id.* at *3.

Likewise, Plaintiff could have joined her constitutional arguments and tort

claims here in the underlying state court action.

Plaintiff argues that the Macomb County Circuit Court could not

have considered his constitutional tort claims as part of his petition for a

writ of superintending control and could not have recovered damages

there, and thus, the doctrine of res judicata does not apply.  Even if true,

Plaintiff's argument lacks merit.  As the Michigan Supreme Court noted in

*Adair*, it does not matter even if "variant forms of relief" are available in the

subsequent suit, 470 Mich. at 124, all that matters is that the two cases

are part of the same transaction. In the state court action, Plaintiff raised a

due process challenge to the removal proceedings which the state judge

addressed.  (Doc. 9, Ex. 12 at ¶¶ 53-58; Ex. 14 at PgID 414-16).[2]  Nothing

prevented Plaintiff from also alleging that the removal proceedings violated

his First Amendment rights or that the Council lacked the authority to

remove him on the theory that only the Governor has that power.

---

[2] The cases Plaintiff cites are inapposite; neither stands for the proposition that a party cannot bring a lawsuit for tortious conduct and violations of constitutional rights at the same time that a party seeks a writ of superintending control.  *See Kelly Downs, Inc. v. Michigan Racing Comm'n*, 60 Mich. App. 539 (1975); *Beer v. City of Fraser Civil Serv., Comm'n*, 127 Mich. App. 239 (1983).

In a similar suit, *Falk v. State Bar of Michigan*, 631 F. Supp. 1515 (W.D. Mich. 1986), *aff'd* 815 F.2d 77 (6th Cir. 1987) (table only), plaintiff brought a petition for a writ of superintending control in the Michigan Supreme Court to challenge the State Bar of Michigan's use of his mandatory bar dues as violative of his First Amendment rights. The Michigan Supreme Court denied his petition and plaintiff then filed a § 1983 suit in federal district court seeking monetary, declaratory, and injunctive relief. *Id.* at 1521. Plaintiff argued claim preclusion did not apply because he could not have brought his § 1983 suit in the Michigan Supreme Court along with his petition for special relief and could not have sought money damages there. *Id.* The court rejected the argument, holding that "a party cannot avoid the effects of claim preclusion by suing on the same subject-matter and simply changing the theory of the litigation." *Id.* In *Falk*, the district court explained its reasoning which has been quoted with approval by the Sixth Circuit:

> "Plaintiff cannot avoid the preclusive effect of claim preclusion by seeking redress in a court of limited original jurisdiction and, then, contending that the first court could not have heard alternative theories arising from the same cause of action. The state proceeding and this proceeding both involve the same facts and evidence. The two actions truly arise from one cause of action.... Plaintiff should not be allowed to hale defendant into a second court simply because the first court in which he chose to sue defendant could not consider all the various theories of recovery

> arising from his single cause of action. Consequently,
> plaintiff's inability to bring a section 1983 action within the
> original jurisdiction of the Michigan Supreme Court does
> not affect the conclusion that the two cases involve the
> same matter in issue."

*Childs v. Van Wert Cty., Ohio*, 959 F.2d 233 (6th Cir. 1992) (table only)

(quoting *Falk*, 631 F. Supp. at 1521, *aff'd*, 815 F.2d 77 (6th Cir. 1987)).

The district court stressed that res judicata operates as a bar "where the

same *subject-matter* is sought to be again litigated, *no matter how*,

between the same parties." *Falk*, 631 F. Supp. at 1521 (internal quotation

marks and citation omitted) (emphasis in original). Because the two

actions arose from the same facts and evidence, the court held that the

two actions arose from one cause of action and res judicata barred plaintiff

from pursuing his § 1983 suit in federal court. *Id.* at 1522. The same

result should be reached here.

Plaintiff also argues that his state court action lacks preclusive effect

because at the time he filed that suit, he had not yet been removed from

office, and thus his claims for constitutional violations did not yet exist.

Once again, Plaintiff's argument lacks merit. While it is true that Plaintiff

initiated his state court lawsuit prior to his removal, and sought a

temporary restraining order or preliminary injunction to enjoin the City

Council from going ahead with a September 18, 2017 hearing regarding

sexual harassment allegations against him and the possibility of his removal, his lawsuit continued after that hearing and after his removal. In fact, the court denied Plaintiff's motion for a preliminary injunction on the grounds that the City Charter gave the Council the authority to hold a tribunal hearing to determine whether Plaintiff should be removed from office, and held that the request for superintending control was premature because the tribunal hearing had not yet been held and thus, there was no record to review. (Doc. 9, Ex. 14 at PgID 413, Ex. 17 at PgId 514).

Once the tribunal hearing was held on September 18, 2017, and Plaintiff was removed from office, Plaintiff filed a motion for superintending control on October 6, 2017 (Doc. 9, Ex. 15) challenging his removal from office. Plaintiff filed this lawsuit many months later on July 13, 2018. (Doc. 1). Plaintiff raised ten objections to the tribunal hearing and his removal, including, among others, insufficient evidence, bias of Council members, lack of formal charges, erroneous conclusions, his inability to cross-examine witnesses, and his inability to vote himself on the motion to remove him from office. While Plaintiff never argued in the state court that he was removed in retaliation for joining with the Mayor and Council member Foster in opposing certain tax increases and petitioning for budget cuts in alleged violation of his First Amendment rights, which is at

the crux of his federal lawsuit, nothing prevented Plaintiff from presenting those arguments in his prior state lawsuit. Both the state lawsuit and the federal lawsuit challenge Plaintiff's removal from office based on charges of sexual harassment against him. That Plaintiff's theory of why his removal was erroneous has broadened in his federal complaint to include alleged violations of his First Amendment rights does not change the fact that both lawsuits arise out of the same September 18, 2017 tribunal hearing and removal.

Having found that state res judicata principles bar the second federal lawsuit, the court considers whether the application of state res judicata principles constitute an "extreme application [] of the doctrine of res judicata . . . inconsistent with a federal right that is fundamental in character." *Ludwig*, 682 F.3d at 460. Because Plaintiff could have litigated his First Amendment claim as part of his writ for a petition of superintending control, there has been no showing that barring this lawsuit based on the doctrine of res judicata is inconsistent with Plaintiff's federal rights.

Because res judicata bars Plaintiff's action, the court does not address the other arguments raised in Defendants' motion for summary judgment.

## V. Conclusion

For the reasons set forth above, IT IS ORDERED that Defendants'

motion for summary judgment (Doc. 9) is GRANTED.

**IT IS SO ORDERED.**

Dated:  January 17, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 17, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---